UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF GEORGIA

STATESBORO DIVISION

| | | |
|---|---|---|
| CINDY DAVISON, Individually and as Administrator of the Estate of Randall Davison, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | CV616-039 |
| STEPHEN NICOLOU, P.A., and SERGEANT DEDRICK ANTHONY | ) ) ) | |
| Defendants. | ) ) | |

## ORDER

For the second time the defendants in this 42 U.S.C. § 1983 prison-death case move to dismiss and to stay discovery. Docs. 35 & 36. The district judge will decide the dismissal motion, while the stay motion will be resolved here.

## I. BACKGROUND

On behalf of Randall Davison's estate, Cindy Davison (his sister) brought this 42 U.S.C. § 1983 action against defendants Stephen Nicolou, P.A., and Sergeant Dedrick Anthony, alleging that they were deliberately indifferent to Randall's serious medical needs while he was incarcerated

at the prison where they worked. Doc. 14. Consequently, Randall died one month before his scheduled release. *Id.* at 3 ¶ 7. He "was one of ten men who died while in that prison's custody, between May 2014 and February 2015." *Id.* ¶ 8.

Cindy originally sued only Nicolou and another, since-dismissed defendant. Docs. 1, 21 & 22. Nicolou moved to dismiss that original Complaint on qualified immunity grounds.[1] Doc. 12. He also moved to stay discovery, doc. 13, to which Cindy consented. Doc. 17. But then she amended her Complaint to add Anthony and bolster her "deliberate

---

[1] As has been explained:

> "The purpose of this immunity is to allow government officials to carry out their discretionary duties without the fear of personal liability or harassing litigation, protecting from suit all but the plainly incompetent or one who is knowingly violating the federal law." *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002) (internal citation omitted). "Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments, and protects all but the plainly incompetent or those who knowingly violate the law." *Messerschmidt v. Millender*, __ U.S. __, 132 S. Ct. 1235, 1244-45 (2012) (citations and internal quotations omitted). "[W]hether an official protected by qualified immunity may be held personally liable for an allegedly unlawful official action generally turns on the 'objective legal reasonableness' of the action, assessed in light of the legal rules that were 'clearly established' at the time it was taken." *Id.* at 1245 (quoting *Anderson v. Creighton*, 483 U.S. 635, 639 (1987)).

*Salter v. Booker*, 2016 WL 3645196 at * 7 (S.D. Ala. June 29, 2016). "The salient question is whether, looking to the decisions of the Supreme Court, the Eleventh Circuit, and the Georgia Supreme Court, the state of the law [at the time of the Randall's illness and death] gave [these defendants] fair warning that their conduct was unlawful." *Bowen v. Warden Baldwin State Prison*, 826 F.3d 1312, 1325 (11th Cir. 2016) (quotes and cite omitted).

indifference" allegations. Doc. 14. Nevertheless, Nicolou moved to modify Local Rule 26.1's time constraints -- basically, stay discovery. Doc. 23.

The Court granted the stay motion but, upon Cindy's reconsideration motion, vacated it. *Davison v. Nicolou*, 2016 WL 3866573 (S.D. Ga. July 13, 2016). First, only Nicolou had appeared by then, and moved to dismiss the original Complaint. Counsel for both defendants signaled, however, that both would again move to dismiss her Amended Complaint. *Id.* at * 2. Second, her amendment alleged that Randall visibly suffered from an inflamed forearm tattoo, yet the defendants were deliberately indifferent:

> 4. Despite the discolored area around Mr. Davison's tattoo; the purplish-red skin on his arm, neck, and chest; a reddened mass on his neck; the tenderness of his chest; his complaints of pain and difficulty breathing and walking; and his numerous pleas for medical care; GSP's medical provider refused to treat Mr. Davison on multiple occasions between January 16, 2015, and January 26, 2015.
>
> 5. When Mr. Davison became critically ill on a Friday due to the infected tattoo, the Defendants left him to further deteriorate without any medical care for three full days, because the prison did not have a person authorized to make treatment decisions readily available over the weekend. No efforts were made to send Mr. Davison to a hospital emergency department or to any outside provider, even though he was clearly succumbing to a rapidly worsening infection. When Mr. Davison finally received treatment

3

on the following Monday, his infection had progressed to severe sepsis from which he did not recover.

Doc. 14 (Amended Complaint) at ¶¶ 4, 5; *see also* ¶ 14 (alleging that Nicolou was the physician assistant responsible for Randall, was aware of his condition, but simply refused to treat him during his urgent-medical-care phase); ¶ 15 ("Sergeant Anthony was aware of Mr. Davison's need for medical care, but with deliberate indifference, prevented him from accessing medical care, at a time when [Randall's] condition required urgent medical attention.").

Those allegations, the Court concluded, may well be enough to pierce the defendants' then putative (since formally raised) qualified immunity defense. *Davison*, 2016 WL 3866573 at *3 (citing *Lancaster v. Monroe Cnty., Ala.*, 116 F.3d 1419, 1425 (11th Cir. 1997) (deliberate indifference can be found where an official "knows that an inmate is in serious need of medical care, but . . . fails or refuses to obtain medical treatment for the inmate."), *McElligott v. Foley*, 182 F.3d 1248, 1255 (11th Cir. 1999) (an official may act with deliberate indifference by delaying the treatment of serious medical needs, providing grossly inadequate care, deciding to take an easier but less efficacious course of treatment, or providing medical care that is so cursory as to amount to no

4

medical care), and *McNeeley v. Wilson*, 2016 WL 1730651 at * 4 (11th Cir. May 2, 2016) (corrections officers were on notice that delaying a proper decontamination for over 20 minutes despite complaints about effects of pepper spray could result in clearly established constitutional violation, and thus officers were not entitled to qualified immunity from § 1983 deliberate indifference claim brought by inmate who was not allowed to decontaminate his person for four hours after being pepper sprayed, despite his complaints of extreme difficulty breathing, burning skin, and red eyes)).

That's still not enough, the defendants contend, in moving to dismiss and stay discovery. Docs. 36 & 45. Cindy disagrees. Doc. 40.

## II. ANALYSIS

Defendants argue that Cindy continues to plead only negligence, not the deliberate indifference needed to support a § 1983 claim. Doc. 36-1 at 1-5. So, they want another stay. *Id.* at 5-8. The core of their renewed motion to dismiss:

> As previously shown, the broad premise of the lawsuit is that inmates at GSP are denied medical care on evenings and weekends, whereas the specific fact allegations show the presence of after-hours or "on-duty" evening medical staffing and also the allegations show that weekend staffing and care was available to inmates at GSP. Likewise, the broad premise of the lawsuit, and

5

also some of its general allegations that are not particularized to any individual or Defendant, is that medical care was refused or denied, whereas the specific fact allegations that pertain to P.A. Nicolou are that Mr. Davison came to him on one occasion seeking medical care or attention and on that occasion P.A. Nicolou provided treatment. The allegation is that the wrong treatment was provided but such course of treatment claims are not constitutional claims and instead sound in negligence.

Doc. 35-1 at 1-2.

The Amended Complaint, defendants contend, "does not cure the fatal defect of the original complaint because it still travels under this same negligence theory. With minor modification, the gist of the lawsuit remains that P.A. Nicolou -- who examined Mr. Davison on one occasion and decided on and provided a course of treatment -- should have known that his selected course of treatment would not cure Mr. Davison. This is classic negligence theory." Doc. 35-1 at 2.

The defendants have a point. "Using the phrase 'deliberately indifferent' as a mere shibboleth is not enough; threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, no longer suffice. . . ." *Williams v. Grant*, 2009 WL 3317262 at * 2 (S.D. Ga. Oct. 14, 2009). And, as underscored in another infection-based, inmate fatality case:

Deliberate indifference is not equivalent to "medical malpractice."

*See, e.g., Campbell v. Sikes*, 169 F.3d 1353, 1363 (11th Cir. 1999) (contrasting deliberate indifference to a prisoner's serious medical needs with medical malpractice). To properly allege deliberate indifference, a plaintiff must allege that each defendant "(1) had subjective knowledge of a risk of serious harm; (2) disregard[ed] that risk; and (3) acted with more than gross negligence." *Harper v. Lawrence County., Ala.*, 592 F.3d 1227, 1234 (11th Cir. 2010) (citing *Burnette v. Taylor*, 533 F.3d 1325, 1331 (11th Cir. 2008)). To put it another way, "[t]here is no liability for 'an official's failure to alleviate a significant risk that he should have perceived but did not,'" *Cottrell v. Caldwell*, 85 F.3d 1480, 1491 (11th Cir. 1996), or for the fact that "'more should have been done' to diagnose and treat [an injury]." *Campbell*, 169 F.3d at 1363. Moreover, "imputed or collective knowledge cannot serve as the basis for a claim of deliberate indifference. Each individual Defendant must be judged separately and on the basis of what that person knows." *Harper*, 592 F.3d at 1234 (emphasis added) (citations and internal punctuation omitted) (citing *Burnette*, 533 F.3d at 1331); *Cook ex rel. Estate of Tessier v. Sheriff of Monroe County., Fla.*, 402 F.3d 1092, 1116 (11th Cir. 2005) ("[N]either *respondeat superior* nor vicarious liability exists under § 1983.").

*Miller v. Correctional Medical Services, Inc.*, 2010 WL 3723998 at * 4 (M.D. Ala. Sept. 16, 2010); *see also id.* at * 6 (complaint failed to plead facts showing how each defendant was deliberately indifferent to inmate's sepsis-induced death).

But Cindy says she has pled enough deliberate indifference facts.[2] She recounts her Amended Complaint:

---

[2] In fact, she construes the defendants' second stay motion as a motion for reconsideration of the last Order -- but masquerading as a stay motion -- one that fails to meet Fed. R. Civ. P. 59(e)'s reconsideration standards. At most, she concludes, they can pursue protective orders, not another stay. Doc. 40 at 1-7.

7

> Defendant Nicolou's conduct went well beyond a "misdiagnosis" of Davison's condition. As alleged in the amended complaint and addressed in Plaintiff's other briefing (Doc. 39 at 8-17, 21-22), Davison displayed multiple signs of an acute medical emergency. For example, on January 21, 2015, Davison made two visits to the medical unit. (Doc. 14 ¶¶ 30-51.) At the time of the second visit, Davison had constant chest pain, difficulty breathing, pain aggravated by movement and inhalation, and redness and inflammation over his upper torso, among other things. (Doc. 14 ¶¶ 41-42.) Even a layperson would seek emergency medical attention for symptoms like these, and a nurse related those symptoms to Nicolou. (Doc. 14 ¶ 43.) But Nicolou -- not a layperson, but a trained medical professional -- "refused to examine Mr. Davison" despite having "knowledge of Mr. Davison's condition, the obvious signs of infection and impending sepsis, and Mr. Davison's repeated requests for medical assistance." (Doc. 14 ¶ 45.) Instead, Nicolou came out of his office and told Davison that he would not see him again. (Doc. 14 ¶ 48.) Two days later, Davison, displaying the same symptoms and experiencing "constant, unremitting pain" (Doc. 14 ¶ 53), again visited the medical unit, and his symptoms were again communicated to Nicolou (Doc. 14 ¶ 54). As before, Nicolou refused to see Davison, treat him, or notify a physician. (Doc. 14 ¶¶ 54-56.) He took this course of action knowing that if Davison was not seen that day, no one would be available to examine him for three days. (Doc. 14 ¶ 19.)

Doc. 40 at 8-9.

In taking a "preliminary peek"[3] at the Amended Complaint as it stands against the latest dismissal motion, the Court agrees that Cindy has pled enough deliberate-indifference facts against Nicolou to warrant

---

[3] "When a party seeks a stay pending resolution of a motion to dismiss, a court must take a preliminary peek at a dispositive motion to assess the likelihood that the motion will be granted." *Sams v. GA West Gate, LLC*, 2016 WL 3339764 at * 6 (S.D. Ga. June 10, 2016) (quotes and cites omitted).

8

continuation of discovery while the motion to dismiss pends.

Cindy argues the same result for defendant Anthony:

> Davison informed Anthony "that he had been ill for days, that he was in constant pain, that he was having trouble walking and breathing, and that *his arm, chest, and neck were purplish red*," and Anthony "*personally observed* Mr. Davison manifest" those symptoms. (Doc. 14 ¶¶ 58-59.) Anthony knew "that there was a serious risk of harm to Mr. Davison if he did not receive medical treatment," but Anthony did not "take any steps" to respond to Davison's obvious need for medical care. (Doc. 14 ¶ 60.) Instead, knowing that his actions would prevent Davison from seeing a medical provider for the next three days, Anthony punished Davison by placing him in an isolation cell for hours before returning Davison to his dormitory. (Doc. 14 ¶ 61.)
>
> That Anthony heard Davison verbally complaining to a nurse "about the failure to treat his condition" (Doc. 14 ¶ 58) does not establish that Anthony was aware of a "treatment decision by a medical professional" (Doc. 36-1 at 5). At most, it establishes that Anthony knew that Davison was having problems accessing medical care -- a problem that Anthony could have addressed by exercising his authority "to summon medical assistance for a prisoner who was in need of medical treatment." (Doc. 14 ¶ 59.)

Doc. 40 at 10-11 (emphasis added).

The Court has reviewed the Amended Complaint and concurs with Cindy's summary. She pleads that any lay person would act on a "color purple" level infection, especially when suffered by a visibly struggling inmate. Doc. 14 ¶¶ 61-62. Of course, this is a closer call than in Nicolou's case. Anthony, after all, was a guard who (under the facts pled)

9

saw more knowledgeable staff decline further treatment. Yet, even lay people know that purple-level infection translates into a medical fire to be promptly put out; that's not done by placing the victim in solitary confinement.

But again, the motion to dismiss -- and thus, whether Cindy has stated a claim against Anthony -- remains before the district judge. The only determination to be made at this juncture is whether the claim is so weak that a discovery stay should be granted. The "preliminary peek" made here counsels against a stay.

## III. CONCLUSION

The Court **DENIES** the defendants' second motion to stay. Doc. 36. The parties shall continue to litigate this case while the district judge considers the current dismissal motion.

**SO ORDERED**, this 5th day of October, 2016.

*/s/ G.R. Smith*
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA