IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF GEORGIA
STATESBORO DIVISION

CINDY DAVISON, as Administrator    *
of the Estate of Randall    *
Davison,    *
   *
     Plaintiff,    *
   *
       v.    *      CV 616-039
   *
STEPHEN NICOLOU, P.A., and    *
SERGEANT DEDRICK ANTHONY,    *
   *
     Defendants.    *

## O R D E R

This matter is before the Court on Defendant's Motion to Dismiss Plaintiff's Amended Complaint. (Doc. 35.) Plaintiff filed a response and sur-reply in opposition (docs. 39, 46), and Defendants filed a reply in support (doc. 44) as well as a response in opposition to Plaintiff's sur-reply (doc. 47). Accordingly, Defendants' motion has been fully briefed and is ripe for the Court's review. For the reasons stated herein, Defendants' motion is **DENIED**.

## I. BACKGROUND[1]

This case arises from the death of Mr. Randall Davison from complications resulting from a bacterial infection he contracted

---

[1] When reviewing a Rule 12(b)(6) motion to dismiss, courts must accept the allegations in the complaint as true and construe them in the light most favorable to the plaintiff. Belanger v. Salvation Army, 556 F.3d 1153, 1155 (11th Cir. 2009) (citing Jackson v. BellSouth Telecomm., 372 F.3d 1250, 1262 (11th Cir. 2004)).

while he was a prisoner at the Georgia State Prison ("GSP") in Reidsville, Georgia. The amended complaint alleges that, while incarcerated, Defendants Stephen Nicolou, P.A., and Sergeant Dedrick Anthony were deliberately indifferent to the serious medical needs of Mr. Davison. Specifically, Plaintiff, as the administrator of Mr. Davison's estate, alleges that Mr. Davison received a tattoo on his forearm from another prisoner in unsanitary conditions at GSP. (Am. Compl., Doc. 14, ¶ 20.) According to Plaintiff, prisoners commonly tattoo one another in unsterile conditions with improvised needles and ink, which carry high risks of infection. (Id. ¶ 21.) When infected tattoos are treated properly, significant illness is rare; left untreated, however, serious infection can lead to sepsis and ultimately death. (Id. ¶ 23.) Defendants and GSP's medical staff were aware of prisoner's proclivity to tattoo one another in unsanitary conditions and the resulting risks of infection. (Id. ¶ 22.) After being tattooed, Mr. Davison's forearm became infected. (Id. ¶¶ 24-25.) Plaintiff concludes that, because of Defendants' deliberate indifference to his medical needs, Mr. Davison's infection went untreated and led to his needless suffering and untimely death. The relevant facts, as alleged by Plaintiff, are as follows.

In late December 2014 or early January 2015, another prisoner tattooed Mr. Davison's forearm in unsanitary conditions. (Id. ¶ 20.) After being tattooed, Mr. Davison's

2

forearm became infected and swollen with pus. (Id. ¶¶ 24-25.) Mr. Davison sought treatment for his infection from GSP's medical unit at 9:40 a.m. on January 21, 2015.[2] (Id. ¶¶ 30-31.) He was first seen by a nurse, Ms. Melissa Hughes, to whom he reported his symptoms, which included a deeply inflamed tattoo, trouble moving his arm, pain in his shoulder, and his forearm, neck, shoulder, and chest having turned deep red. (Id. ¶¶ 31-33.) Ms. Hughes related Mr. Davison's description of his symptoms to the on-duty medical provider, Defendant Nicolou. (Id. ¶ 34.) At approximately 9:55 a.m., Defendant Nicolou examined Mr. Davison, prescribed him three anti-inflammatory drugs,[3] and sent him back to his dormitory. (Id. ¶¶ 35-39.)

After being sent back to his dormitory by Defendant Nicolou, Mr. Davison's condition deteriorated. (Id. ¶ 40.) At approximately 2:10 p.m. on January 21, 2015, Mr. Davison returned to the GSP medical unit. (Id. ¶ 41.) He was first seen by a different nurse, Ms. Tomeka Browder, to whom he reported his symptoms, which now included pressure in his chest

---

[2] As alleged by Plaintiff, Georgia Correctional Healthcare ("GCHC") contracts with the Georgia Department of Corrections to provide health care services to its prisoners. (Am. Compl. ¶ 17.) Plaintiff contends that there were only four "medical providers" capable of diagnosing and treating prisoners' medical problems that were employed by GCHC and assigned to GSP at the time of the events described in Plaintiff's amended complaint. (Id. ¶¶ 18-19.) These medical providers included Defendant Nicolou, another physician's assistant, a nurse practitioner, and a physician. (Id. ¶ 18.) Notably, only "non-provider" nurses are on duty during weekend hours at GSP. (Id. ¶ 19.)
[3] Specifically, Defendant Nicolou prescribed Mr. Davison: (1) Toradol (a non-steroidal, anti-inflammatory drug used for short-term treatment of pain); (2) Depo-Medrol (an anti-inflammatory glucocorticoid); and (3) Solu-Medrol (an anti-inflammatory glucocorticoid). (Am. Compl. ¶ 37 n.1.) None of the aforementioned drugs are indicated for treatment of a bacterial infection or are otherwise able to counteract such an infection. (Id.)

radiating down his left arm, trouble breathing, and constant chest pain that was aggravated by movement and inhalation. (Id. ¶¶ 41-42.) He also presented with redness and inflammation of his chest, neck, and tattoo site. (Id.) Ms. Browder related Mr. Davison's arrival and symptoms to Defendant Nicolou, who then refused to examine Mr. Davison. (Id. ¶¶ 43-45.) When Ms. Browder informed Mr. Davison that Defendant Nicolou would not examine him and that he should return to his dormitory, Mr. Davison protested and complained that he was ill and needed to be treated. (Id. ¶¶ 46-47.) Defendant Nicolou then came out of his office and told Mr. Davison that he would not see Mr. Davison again that day. (Id. ¶ 48.)

Between January 21 and January 23, Mr. Davison's condition continued to deteriorate; he required assistance to get in and out of his bunk, he could not move his tattooed arm, he had trouble walking and breathing, and he was in constant pain. (Id. ¶¶ 52-53.) On the morning of January 23, 2015, Mr. Davison again went to GSP's medical unit and related his symptoms to a nurse. (Id. ¶ 53.) A medical staff member then conveyed Mr. Davison's complaints and symptoms to Defendant Nicolou.[4] (Id. ¶ 54.) The medical staff member, "under the supervision of and with the knowledge of Defendant Nicolou, refused to treat Mr.

---

[4] It is unclear from Plaintiff's Amended Complaint and briefing whether the aforementioned unidentified nurse and the unidentified medical staff member are the same person. The Court has presumed, however, that Plaintiff has used particular language intentionally and that the nurse and medical staff member are different individuals for the purposes of its analysis below.

4

Davison." (Id.) Desperate for medical assistance, Mr. Davison complained to the nurse about the failure to treat his condition and asked the nurse to send him to a doctor. (Id. ¶¶ 57-58.) Mr. Davison then explained to Defendant Sergeant Dedrick Anthony, who had observed Mr. Davison's complaints to the nurse, that he had been ill for days, that he was in constant pain, that he was having trouble walking and breathing, and that his arm, chest, and neck were purplish-red. (Id. ¶ 58.) In response, Defendant Anthony ordered that Mr. Davison be confined to an isolation cell for several hours. (Id. ¶¶ 60-61.) No medical treatment was provided to Mr. Davison before, during, or after his isolation. (Id. ¶¶ 60-62.)

Mr. Davison's condition continued to deteriorate. (Id. ¶¶ 62, 64.) On the evening of Friday, January 23, 2015, a correctional staff member told a nurse about Mr. Davison's red and swollen neck and the need to treat Mr. Davison's infection. (Id. ¶ 63.) In response, the nurse told the correctional staff member that there was "nothing they can do" because there was no healthcare "provider" on duty at GSP on the weekend. (Id.) While other prisoners submitted multiple sick call requests on Mr. Davison's behalf over the weekend, no medical treatment was provided to Mr. Davison until the morning of Monday, January 26, 2015. (Id. ¶¶ 65-66.)

Unable to walk, Mr. Davison was taken to the GSP medical unit by wheelchair on January 26, 2015. (Id. ¶ 67.) There, Mr.

Davison was examined by a nurse practitioner, Tim Hiller, who noted that Mr. Davison had sharp and constant pain, trouble breathing, "purplish red" skin on his chest and neck, a reddened and scabbed arm, a large reddened mass on his neck, and cellulitis on his shoulder. (Id. ¶¶ 68-69.) Mr. Hiller recommended that Mr. Davison be transported to the Meadows Regional Medical Center in Vidalia, Georgia, where he was admitted to the intensive care unit and diagnosed with staphylococcus, sepsis, acute renal failure, and rhabdomyolysis. (Id. ¶¶ 71-72.) Mr. Davison also had gangrene on his limbs, respiratory failure, and liver failure. (Id.) Mr. Davison was subsequently transferred to the intensive care unit at the Atlanta Medical Center, where he passed away on February 15, 2015 from sepsis and related multi-system organ failure. (Id. ¶¶ 5-6, 74-75.)

On April 4, 2016, Plaintiff instituted this case. (Doc. 1.) On May 9, 2016, Defendant Nicolou filed a motion to dismiss Plaintiff's complaint. (Doc. 12.) On May 25, 2016, Plaintiff filed an amended complaint. (Doc. 14.) On July 29, 2016, Defendants filed their present motion to dismiss Plaintiff's amended complaint. (Doc. 35.)

## II. LEGAL STANDARD

Under Federal Rule of Civil Procedure 8(a)(2), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief" to give the defendant

fair notice of both the claim and the supporting grounds. <u>Bell</u> <u>Atl. Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007). To survive a Rule 12(b)(6) motion to dismiss, therefore, a complaint must include enough "factual allegations to raise a right to relief above the speculative level," and those facts must "state a claim to relief that is plausible on its face." <u>Id.</u> at 570. Although a complaint attacked by a Rule 12(b)(6) motion need not be buttressed by detailed factual allegations, the plaintiff's pleading obligation "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." <u>Id.</u> at 555. The Rule 8 pleading standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (quoting <u>Twombly</u>, 556 U.S. at 555).

At the same time, a complaint should not be dismissed for failure to state a claim "unless it appears beyond a doubt that the plaintiff can prove no set of circumstances that would entitle him to relief." <u>Conley v. Gibson</u>, 355 U.S. 41, 45-46 (1957); <u>see also</u> <u>Robinson v. United States</u>, 484 F. App'x 421, 423 (11th Cir. 2012) (quoting <u>Lopez v. First Union Nat'l Bank of</u> <u>Fla.</u>, 129 F.3d 1186, 1189 (11th Cir. 1997)). At this stage, courts must accept as true all facts alleged in the complaint and construe all reasonable inferences in the light most favorable to the plaintiff. <u>Belanger v. Salvation Army</u>, 556

F.3d 1153, 1155 (11th Cir. 2009) (citing Jackson v. BellSouth Telecomm., 372 F.3d 1250, 1262 (11th Cir. 2004)).

## III. DISCUSSION

Plaintiff alleges in her amended complaint that Defendants were deliberately indifferent to Mr. Davison's medical needs in violation of Mr. Davison's rights under the Eighth Amendment and seeks money damages under 28 U.S.C. § 1983. In their motion to dismiss, Defendants allege that Plaintiff has failed to state a claim upon which relief can be granted and that qualified immunity bars Plaintiff's claims.

### A. DELIBERATE INDIFFERENCE TO MEDICAL NEEDS

Deliberate indifference to the serious medical needs of a prisoner is proscribed by the Eighth Amendment's prohibition of unnecessary and wanton infliction of pain. Harris v. Leder, 519 F. App'x 590, 595 (11th Cir. 2013) (citing Estelle v. Gamble, 429 U.S. 97, 104 (1976)). To prove deliberate indifference, a plaintiff must show: (1) the prisoner had a serious medical need; (2) the defendant acted with deliberate indifference to the prisoner's serious medical need; and (3) the defendant's wrongful conduct caused the prisoner's injury. Goebert v. Lee Cnty., 510 F.3d 1312, 1326 (11th Cir. 2007) (citing Bozeman v. Orum, 422 F.3d 1265, 1272 (11th Cir. 2005) (per curiam), abrogated on other grounds by Kingsley v. Hendrickson, 135 S. Ct. 2466 (2015)); Hale v. Tallapoosa Cnty., 50 F.3d 1579, 1582 (11th Cir. 1995)).

### 1. Mr. Davison's Serious Medical Need

The first element of a deliberate indifference claim requires a plaintiff to show that the prisoner had an objectively serious medical need. "A medical need that is serious enough to satisfy the objective component 'is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" Id. (quoting Hill v. Dekalb Reg'l Youth Det. Ctr., 40 F.3d 1176, 1187 (11th Cir. 1994), overruled in part on other grounds by Hope v. Pelzer, 536 U.S. 730, 739 n.9 (2002)).

Defendants do not appear to contest whether Mr. Davison's medical needs were sufficiently serious to satisfy this objective component, and the Court is satisfied as to their seriousness. Plaintiff alleges that Mr. Davison suffered from a serious bacterial infection that resulted from a tattoo he received in unsterile conditions while incarcerated. (Am. Compl. ¶¶ 20-21.) While early treatment can significantly reduce the risks associated with such a bacterial infection, lack of proper treatment can – and did – result in sepsis and even death. (Id. ¶¶ 5, 13, 23-24.) Moreover, the seriousness of the symptoms resulting from Mr. Davison's bacterial infection, the vast majority of which physically manifested themselves to the naked and untrained eye, are so obvious that even a lay person would easily recognize the necessity for

medical attention. See, e.g., Andrews v. Camden Cty., 95 F. Supp. 2d 217, 227-28 (D.N.J. 2000) (life-threatening blood infection and resulting symptoms were obvious serious medical need); see also Brown v. Hughes, 894 F.2d 1533, 1538 (11th Cir. 1990) (collecting cases as to what constitutes a serious medical need).

### 2. Defendants Acted with Deliberate Indifference

The second element of a deliberate indifference claim requires a showing that each defendant acted with deliberate indifference to the prisoner's medical need. This in turn requires proof of: (a) the defendant's subjective knowledge of a risk of serious harm; and (b) the defendant's disregard of that risk; (c) by conduct that is more than gross negligence. Goebert, 510 F.3d at 1327 (quoting Bozeman, 422 F.3d at 1272).

To satisfy the "subjective knowledge of the risk" sub-element, a defendant "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer v. Brennan, 511 U.S. 825, 837 (1994). Deliberate indifference does not encompass "an official's failure to alleviate a significant risk that he should have perceived but did not." Burnette v. Taylor, 533 F.3d 1325, 1331 (11th Cir. 2008) (quoting Farmer, 511 U.S. at 838); see also Keele v. Glynn Cty., Ga., 938 F. Supp. 2d 1270, 1292 (S.D. Ga. 2013) ("[T]he official must have actually perceived the medical need."). Nonetheless, "[w]hether

a particular defendant has subjective knowledge of the risk of serious harm is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence, and a factfinder may conclude that a [defendant] knew of a substantial risk from the very fact that the risk was obvious." Goebert, 510 F.3d at 1312 (quoting Farmer, 511 U.S. at 842).

To satisfy the "disregard of the risk" sub-element, Plaintiff must show that the defendant "disregarded [the substantial risk of serious harm to the prisoner] by failing to take reasonable measures to abate it." Keele, 938 F. Supp. 2d at 1292 (quoting Farmer, 511 U.S. at 847). Thus, even if a defendant actually knew of a substantial risk to a prisoner's health and the resulting harm was not ultimately averted, no liability will attach if the defendant responded reasonably to the perceived risk. Id. (quoting Farmer, 511 U.S. at 844). Even if a defendant is generally attentive to a prisoner's medical needs, however, one episode of misconduct can suffice for a finding of deliberate indifference. Rogers v. Evans, 792 F.2d 1052, 1062 (11th Cir. 1986) (citing Murrell v. Bennett, 615 F.2d 306, 310 n.4 (5th Cir. 1980)). Like the first sub-element, this sub-element "is a question of fact that can be shown by standard methods." Goebert, 510 F.3d at 1327 (citing Farmer, 511 U.S. at 846).

To satisfy the final sub-element, a plaintiff must show that the defendant's relevant conduct constituted more than gross negligence. Goebert, 510 F.3d at 1327; see also Nimmons v. Aviles, 409 F. App'x 295, 297 (11th Cir. 2011) ("For medical treatment to rise to the level of a constitutional violation, the care must be so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness. [The plaintiff] must demonstrate that [the defendant's] response to his medical need was more than merely accidental inadequacy, negligence in diagnosis or treatment, or even medical malpractice actionable under state law." (citations omitted)); Rogers, 792 F.2d at 1060 ("The issue is whether the questioned conduct is cruel and unusual because it involves deliberate indifference, or something more than a medical judgment call, an accident, or an inadvertent failure." (quoting Murrell, 615 F.2d at 310 n.4)). A defendant may disregard a risk with more than gross negligence by, inter alia, intentionally failing or refusing to obtain medical treatment,[5] delaying treatment,[6] providing grossly inadequate or

---

[5] "This court has consistently held that knowledge of the need for medical care and intentional refusal to provide that care constitute deliberate indifference." Mandel v. Doe, 888 F.2d 783, 788 (11th Cir. 1989) (citing Carswell, 854 F.2d at 457; Ancata v. Prison Health Services, Inc., 769 F.2d 700, 704 (11th Cir. 1985); Fielder v. Bosshard, 590 F.2d 105, 108 (5th Cir. 1979)).

[6] "Even where medical care is ultimately provided, a prison official may nonetheless act with deliberate indifference by delaying the treatment of serious medical needs." Pourmoghani-Esfahani v. Gee, 625 F.3d 1313, 1317 (11th Cir. 2010) (citation omitted). Where the prisoner has suffered increased physical injury due to the delayed provision of medical services, factors to be considered include: (1) the seriousness of the medical need;

inappropriate diagnosis or treatment,[7] deciding to take an easier but less efficacious course of treatment,[8] or providing medical treatment that is so cursory as to amount to no medical treatment at all.[9]  McElligott v. Foley, 182 F.3d 1248, 1255 (11th Cir. 1999) (citations omitted).

Here, Defendant Nicolou argues that, because Plaintiff has allegedly failed to specifically plead that Defendant Nicolou drew the conclusion that Mr. Davison was suffering from a bacterial infection that required treatment with antibiotics, Plaintiff's complaint fails on its face.  In support, Defendant Nicolou cites to Franklin v. Curry, 738 F.3d 1246, 1250 (11th Cir. 2013), for the proposition that Plaintiff's use of the phrase "knew or should have known that Mr. Davison was dangerously ill" does not meet the first sub-element's subjective knowledge standard.  (See Am. Compl., ¶ 49.)  Even ignoring that Plaintiff has in fact alleged that Defendant

---

(2) whether the delay worsened the medical condition; and (3) the reason for the delay.  Goebert, 510 F.3d at 1327 (citing Hill, 40 F.3d at 1189).

[7] "Medical care so inappropriate as to evidence intentional maltreatment or a refusal to provide essential care violates the eighth amendment."  Rogers, 792 F.2d at 1058 (citing Green v. Carlson, 581 F.2d 669, 675 (7th Cir. 1978), aff'd, 446 U.S. 14 (1980)).  "Whether an instance of medical misdiagnosis resulted from deliberate indifference or negligence is a factual question requiring exploration by expert witnesses." Id. (citing Merritt v. Faulkner, 697 F.2d 761, 765 (7th Cir. 1983)).

[8] "[W]hen a prison inmate has received medical care, courts hesitate to find an Eighth Amendment violation.  Hesitation does not mean, however, that the course of a physician's treatment of a prison inmate's medical or psychiatric problems can never manifest the physician's deliberate indifference to the inmate's medical needs.  We reaffirm our position in Rogers that grossly incompetent medical care or choice of an easier but less efficacious course of treatment can constitute deliberate indifference." Waldrop v. Evans, 871 F.2d 1030, 1035 (11th Cir. 1989) (internal citations omitted).

[9] "When the need for treatment is obvious, medical care which is so cursory as to amount to no treatment at all may amount to deliberate indifference." Mandel, 888 F.2d at 789 (citation omitted).

13

Nicolou had subjective knowledge of the facts from which he could infer that a substantial risk existed and that he in fact drew that inference, Plaintiff has pled a litany of facts from which a reasonable factfinder could draw such a conclusion. (See, e.g., Am. Compl., ¶¶ 4-5, 14, 45, 55, 79.) Unlike the plaintiff in Curry, Plaintiff has not simply recited the elements of a deliberate indifference claim, but has provided a detailed claim that is plausible on its face. Cf. Curry, 738 F.3d at 1251-52.

Defendant Nicolou also argues that, even if he did have subjective knowledge of a risk of serious harm to Mr. Davison, he did not disregard that risk or otherwise engage in conduct greater than gross negligence. Defendant Nicolou contends that, because he examined Mr. Davison and provided him with a schedule of anti-inflammatory medication on the morning of January 21, 2015, Plaintiff's arguments are nothing more than negligence or medical malpractice claims. (Id.) Defendant Nicolou's argument ignores, however, that the provision of medical services in response to a serious medical risk is not necessarily sufficient to defeat a claim of deliberate indifference. See McElligott, 182 F.3d at 1255, see also Fns. 5-9, supra. Moreover, while Defendant Nicolou attempts to couch Plaintiff's claims as being a simple difference in medical opinion, Plaintiff's claims are not so limited. Indeed, Plaintiff has alleged facts from which a reasonable factfinder could conclude that Defendant Nicolou,

*inter alia*: (a) failed or refused to provide or obtain medical treatment for Mr. Davison on the afternoon of January 21 and January 23; (b) provided grossly inadequate or inappropriate diagnosis or treatment; (c) took an easier but less efficacious course of treatment; and/or (d) provided medical treatment that was so cursory as to amount to no medical treatment at all. See McElligott, 182 F.3d at 1255; see also Fns. 5-9, *supra*. As such, Plaintiff has sufficiently satisfied all three sub-elements of the second element of her deliberate indifference claim against Defendant Nicolou.

Defendant Anthony raises similar arguments to those raised by Defendant Nicolou in attacking the second element of Plaintiff's deliberate indifference claim, and these arguments fail for similar reasons. Despite Defendant Anthony's arguments to the contrary, Plaintiff has pled sufficient facts from which a reasonable factfinder could draw the conclusion that Defendant Anthony had subjective knowledge of the facts from which he could infer that a substantial risk of serious harm existed and that he in fact drew that inference. (See Am. Compl., ¶¶ 15, 58-60, 80.) Moreover, Plaintiff has alleged facts from which a reasonable factfinder could conclude that Defendant Anthony disregarded that risk by conduct greater than gross negligence because he, *inter alia*: failed or refused to obtain medical treatment for Mr. Davison, confined him to an isolation cell

15

until all medical providers had left for the weekend, and failed to monitor his condition.[10]

Defendant Anthony argues that it would be unreasonable to require him to second-guess a medical professional's refusal to provide treatment to Mr. Davison. Defendant Anthony ignores, however, that the Eleventh Circuit has previously placed such an onus on prison security staff. See, e.g., Goebert, 510 F.3d at 1327-29 ("The fact that Goebert had been seen by Dr. Brown does not mean that a layman could not tell that she had a serious medical need at the time Captain Weaver received her complaint. . . . Captain Weaver had a duty to look into the matter. . . . Rather than take any action or even inquire into the situation, Weaver referred Goebert back to the same medical staff that she told him had ignored her daily requests for aid."). Moreover, Defendant Anthony's argument is not necessarily supported by the facts; Plaintiff has alleged only that Defendant Anthony "was present on January 23, when Mr. Davison verbally complained to a nurse about the failure to treat his condition," not necessarily that Defendant Anthony was aware of how or why treatment was being refused or even that treatment had been refused in his

---

[10] See, e.g., Goebert, 510 F.3d at 1328 (security officer could be liable for deliberate indifference for failure to obtain medical services for prisoner); Brown, 894 F.2d at 1538 (security officer could be liable for deliberate indifference for delay in seeking medical treatment for prisoner); Snow ex rel. Snow v. City of Citronelle, AL, 420 F.3d 1262, 1270 (11th Cir. 2005) (security officer could be liable for deliberate indifference for failure to adequately monitor suicidal detainee); see also Coweta Cty., 21 F.3d at 393 n.6 ("The Due Process Clause of the Fourteenth Amendment protects a pre-trial detainee, and the protection corresponds with that provided to prisoners by the Eighth Amendment." (citations omitted)).

16

presence.　(Am. Compl. ¶ 58.)　As such, Plaintiff has sufficiently satisfied all three sub-elements of the second element of her deliberate indifference claim against Defendant Anthony.

### 3. Defendants' Acts Caused Mr. Davison's Injuries

The final element of a deliberate indifference claim requires a plaintiff to show that "the constitutional violation caused the injury." Cottone v. Jenne, 326 F.3d 1352, 1358 (11th Cir. 2003) (citing Marsh v. Butler County 268 F.3d 1014, 1028 (11th Cir. 2001) (en banc)); Goebert, 510 F.3d at 1327. Causation "can be shown by personal participation in the constitutional violation." Goebert, 510 F.3d at 1327 (citing Zatler v. Wainwright, 802 F.2d 397, 401 (11th Cir. 1986) (per curiam)).　While supervisory officials are not liable under Section 1983 for the unconstitutional acts of their subordinates on the basis of respondeat superior or vicarious liability, supervisor liability for a subordinate's acts may exist when there is a causal connection between the actions of a supervising official and the alleged constitutional deprivation, such as: (a) a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do; (b) a supervisor's custom or policy results in deliberate indifference to constitutional rights; or (c) the supervisor directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully

and failed to stop them from doing so. Cottone, 326 F.3d at 1360-61 (quotations and citation omitted).

Here, while Defendant Nicolou contests supervisor liability for the medical staff member who refused to treat Mr. Davison on January 23, Defendants do not appear to contest that, if they were in fact deliberately indifferent to Mr. Davison's serious medical needs, their respective constitutional violations caused Mr. Davison's suffering and eventual death. Nonetheless, the Court finds that Plaintiff has sufficiently established the causation element for the purposes of its analysis.[11] As alleged by Plaintiff and addressed in Section III.A.2, *supra*, Defendants personally participated in denying or delaying adequate treatment for Mr. Davison's serious medical needs. But for their deliberate indifference to Mr. Davison's bacterial infection, Mr. Davison's condition would not have deteriorated, he would not have become septic, nor would he have succumbed to multiple-organ failure. (Am. Compl. ¶¶ 6, 21-24, 40, 52, 61-62, 84.) As to Defendant Nicolou's attempt to avoid supervisor liability, the Court finds it reasonable to infer from

---

[11] See, e.g., Mandel, 888 F.2d at 789 (failure of physician's assistant to order an X-ray of prisoner's broken leg, apprise supervising doctor of prisoner's condition, or have prisoner examined by a doctor or taken to a hospital may have caused worsening of condition or suffering of unnecessary pain); Carswell, 854 F.2d at 457 (failure of physician's assistant to take adequate steps to ensure prisoner received adequate treatment for his deteriorating condition may have caused unnecessary suffering); Goebert, 510 F.3d at 1329 (jailer's failure to act on detainee's serious medical risks delayed detainee's treatment and may have caused worsening in her condition); H.C. by Hewett v. Jarrard, 786 F.2d 1080, 1087 (11th Cir. 1986) (superintendent's authorization and imposition of isolation "effectively placed medical attention beyond [the prisoner's] reach" and provides necessary causal connection).

Plaintiff's allegations that Defendant Nicolou had sufficient oversight of the relevant medical staff member and either directed that staff member to act unlawfully or improperly failed to stop him from doing so. See, e.g., Franklin v. Tatum, 627 F. App'x 761, 768 (11th Cir. 2015) (sheriff had sufficient knowledge and ability to stop unconstitutional conduct to be held liable for sexual assault of inmate by transportation officer).

### B. QUALIFIED IMMUNITY

Qualified immunity bars government officials from being held liable for civil damages so long as their conduct does not violate clearly established statutory or constitutional rights. Morris v. Town of Lexington Alabama, 748 F.3d 1316, 1321–22 (11th Cir. 2014) (quoting Pearson v. Callahan, 555 U.S. 223, 231 (2009)). To claim qualified immunity, a defendant must first prove that he was a government official acting within his discretionary authority. Cottone, 326 F.3d at 1357. To survive a motion to dismiss based on a defendant's *prima facie* claim of qualified immunity, a plaintiff must: (1) allege facts sufficient to state a violation of his constitutional rights; and (2) demonstrate that the rights violated were clearly established at the time the defendant acted. Id. at 1322 (citing Pearson, 555 U.S. at 232). A right is clearly established where it would be clear to a reasonable person in the defendant's position that his conduct was unlawful in the

situation he confronted. Id. (citing Loftus v. Clark–Moore, 690 F.3d 1200, 1204 (11th Cir. 2012); see also Valderrama v. Rousseau, 780 F.3d 1108, 1112-13 (11th Cir. 2015) ("A principle of constitutional law can be clearly established even if there are notable factual distinctions between the precedents relied on and the cases then before the Court, so long as the prior decisions gave reasonable warning that the conduct at issue violated constitutional rights." (quoting Holloman ex rel. Holloman v. Harland, 370 F.3d 1252, 1277 (11th Cir. 2004) (internal quotations omitted))).

As stated, Plaintiff has sufficiently pled a violation of Mr. Davison's rights under the Eighth Amendment. Assuming that Defendants were government officials acting within their discretionary authority,[12] all that remains is to determine whether the state of the law in January 2015 would have given Defendants "fair warning" that Mr. Davison's alleged treatment was unconstitutional. See Hope, 536 U.S. at 731. Despite the law being "well settled that prison officials' deliberate indifference to prisoners' serious medical needs gives rise to a constitutional claim," Harris v. Coweta Cty., 21 F.3d 388, 393 (11th Cir. 1994), Defendants contend that the contours of the law were not sufficiently defined to put them on notice that

---

[12] In passing, Plaintiff cites Hinson v. Edmond, 192 F.3d 1342, 1345 (11th Cir. 1999), for the proposition that qualified immunity does not apply to private medical personnel who contract with the state to provide medical care to prisoners. Because Defendant Nicolou's qualified immunity claims presently fail on their merits, the Court has assumed for the sake of its analysis, without deciding, that Defendant Nicolou was a government official entitled to assert the defense of qualified immunity.

their respective conduct was unconstitutional.[13]  The Court disagrees.

Here, Defendant Nicolou's qualified immunity defense fails on the facts as pled by Plaintiff.  Defendant Nicolou's attempts to couch Plaintiffs' claims as a "difference in medical opinion" or "error in judgment" are misleading.  Rather, Plaintiff has alleged facts sufficient to state a deliberate indifference claim against Defendant Nicolou for a variety of reasons, including intentionally failing or refusing to obtain or provide medical treatment, delaying treatment, providing grossly inadequate or inappropriate diagnosis or treatment, deciding to take an easier but less efficacious course of treatment, and/or providing medical treatment that was so cursory as to amount to no medical treatment at all, all of which were clearly prohibited as of January 2015.[14]  It simply cannot be argued in

---

[13] (See, e.g., Doc 35-1, at 25 ("There is no clearly established law holding that an error in judgment in providing treatment (which is alleged but which P.A. Nicolou denies) is a basis for liability under the Eighth Amendment and section 1983. . . . There is no clearly established law holding that a correctional officer such as Sgt. Anthony has a constitutional duty to override the decision of a medical professional.").)

[14] See, e.g., Mandel, 888 F.2d at 789 (failure of physician's assistant to apprise his superior of prisoner's broken leg, obtain an X-ray of prisoner's leg, or to have prisoner examined by a doctor or taken to a hospital may be deliberate indifference); Carswell, 854 F.2d at 457 (though physician's assistant examined inmate on three different occasions and gave inmate laxatives and pain medication, physician's assistant could still be found to have been deliberately indifferent by failing to advise supervising physician of prisoner's condition); Harper v. Lawrence Cty., Ala., 592 F.3d 1227, 1237 (11th Cir. 2010) (delayed or inadequate treatment of alcohol withdrawal is unlawful); Rogers, 792 F.2d at 1062 (even if doctor provided a period of attentive, competent care to prisoner, one episode of grossly incompetent or inadequate medical care would be sufficient to constitute deliberate indifference); Ancata, 769 F.2d at 704 (medical staffs' cursory treatment of detainee's obvious medical need may amount to deliberate indifference); see also McElligott, 182 F.3d at 1255; Fn. 5-9, supra.

good faith that, if Plaintiff's allegations prove true, Defendant Nicolou was not on notice that his conduct was prohibited by the Eighth Amendment.

Defendant Anthony's qualified immunity defense also fails at this stage. Plaintiff has alleged facts sufficient to state a deliberate indifference claim against Defendant Anthony on a variety of theories, including failure or refusal to obtain medical treatment, isolated confinement so as to prevent access to medical care, and/or failure to monitor, all of which were clearly established as violating of the Eighth Amendment as of January 2015.[15] Defendant Anthony's argument that there is no precedent that would put him on notice of his duty to "override" the decisions of GSP's medical staff is belied by the Eleventh Circuit's holding in Goebert. See Goebert, 510 F.3d at 1327-29. Further, as previously noted, this argument is based on an inference of knowledge of the medical staffs' decisions by Defendant Anthony that is not supported by the facts as alleged by Plaintiff. (See Am. Compl. ¶¶ 58-61.) Accordingly, as with

---

[15] See, e.g., Goebert, 510 F.3d at 1327-29 (prison guard had "duty to look into the matter" and not simply refer prisoner back to the same medical staff that she alleged had been ignoring her requests for aid); Brown, 894 F.2d at 1539 (guards' failure and/or delay in obtaining medical treatment for prisoner's broken foot may constitute deliberate indifference); Jarrard, 786 F.2d at 1087 (superintendent's authorization and imposition of isolation which "effectively placed medical attention beyond [prisoner's] reach" may constitute deliberate indifference); Snow ex rel. Snow, 420 F.3d at 1270 (officer's failure to properly monitor suicidal detainee could constitute deliberate indifference); Lancaster v. Monroe Cty., Ala., 116 F.3d 1419, 1426 (11th Cir. 1997) ("[S]heriffs and jailers cannot place or keep a chronic alcoholic in jail without any medical supervision, when the defendants are aware that the alcoholic is suffering from a severe form of alcohol withdrawal." (citing Morrison v. Washington County, 700 F.2d 678, 686 (11th Cir. 1983)).

Defendant Nicolou, if Plaintiff's allegations prove true, Defendant Anthony had fair warning that his conduct was prohibited by the Eighth Amendment.

## IV. CONCLUSION

At this stage, taking Plaintiff's allegations as true, the Court concludes that Plaintiff has sufficiently stated a claim for deliberate indifference against Defendants and that Defendants' claims of qualified immunity fail. The Court does not definitively decide, however, whether Defendants were in fact deliberately indifferent to Mr. Davison's medical needs, and as such, whether qualified immunity is truly unavailable to Defendants. Whether Defendants actually perceived Mr. Davison's serious medical risks and were in fact so grossly incompetent or inadequate in responding thereto so as to shock the conscience remains to be seen. The Court's present review, however, is limited to the four corners of Plaintiff's amended complaint, and the amended complaint alleges sufficient facts to survive Defendants' motion to dismiss. See Kothmann v. Rosario, 558 F. App'x 907, 911 (11th Cir. 2014). For these reasons, Defendants' Motion to Dismiss Plaintiff's Amended Complaint (doc. 35) is **DENIED.**[16]

---

[16] Defendant Nicolou's prior Motion to Dismiss (doc. 12), which is based on near identical arguments as Defendants' present motion to dismiss, is also **DENIED AS MOOT.** Also, the Court need not address Defendants' Objection to Magistrate Judge Order (doc. 49), which sought an order from this Court reversing the United States Magistrate Judge's Order (doc. 48) denying Defendants' request to stay discovery in this matter pending the resolution of Defendants' present motion to dismiss.

**ORDER ENTERED** at Augusta, Georgia this 27th day of October, 2016.

HONORABLE J. RANDAL HALL
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF GEORGIA