UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA
STATESBORO DIVISION

| | | |
|---|---|---|
| CINDY DAVISON, as Administrator of the Estate of Randall Davison, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | CV616-039 |
| STEPHEN NICOLOU, | ) ) | |
| Defendant. | ) | |

# ORDER

Plaintiff Cindy Davison, in her executory capacity, moves the Court to sanction defendant Stephen Nicolou, a Georgia State Prison physician's assistant, for spoliation of certain medical records, including decedent Randall Davison's sick call slips and segregation checklists that would demonstrate his physical condition in the days leading to his death. *See* doc. 79-1 & 91. Defendant opposes. *See* docs. 85 & 87.[1]

---

[1] Defendant e-filed his opposition a few minutes before midnight the night it was due. Doc. 85. Twelve hours later, without requesting leave of Court to do so or even getting a stipulation from plaintiff that it would not be opposed, defendant also filed a "supplement" brief. Doc. 87. Plaintiff moves the Court to strike defendant's supplemental response opposing the motion as being untimely filed, citing Fed. R. Civ. P. 6(b)(1)(B) ("When an act may or must be done within a specified time, the court may, for good cause, extend the time . . . on motion made after the time has expired if the party failed to act because of excusable neglect."). Doc. 90 at 2. In his supplemental response, Nicolou explained that his "counsel attempted to respond as

## I. BACKGROUND

Plaintiff pursues this civil rights action after Randall, the decedent, died "from a serious infection stemming from a tattoo on his forearm" while in the custody of the Georgia Department of Corrections. *See*

---

quickly and succinctly as possible to the motions [for sanctions, to amend the complaint, as well as file his own motion for summary judgment by the filing deadline] but inadvertently omitted . . . from the response" the information and arguments contained in the supplemental response. Doc. 87 at 1; *see also* doc. 94 at 1 (offering no explanation why the information in the supplemental response was not included in the initial filing, instead emphasizing that counsel had focused instead on the summary judgment motion).

While the Court is sympathetic to counsel's plight, being slammed with multiple deadlines all at once, it is reticent to excuse counsel's attempt to sneak in more argument to a timely-submitted response half a day later. It was merely through counsel's own "inadvertence" that he "omitted" the additional argument and exhibits. Doc. 87 at 1. But the inquiry for "excusable neglect" under Rule 6(b) "is at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission." *Walter v. Blue Cross & Blue Shield United of Wis.*, 181 F.3d 1198, 1201 (11th Cir. 1999). Excusable neglect is evaluated by: "the danger of prejudice to the nonmovant, the length of delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith." *Advanced Estimating System, Inc. v. Riney*, 130 F.3d 996, 997-98 (11th Cir. 1997) (quotes and cite omitted). The "absence of prejudice to the nonmoving party" and "the interest of efficient judicial administration" are to be accorded "primary importance." *Cheney v. Anchor Glass Container Corp.*, 71 F.3d 848, 850 (11th Cir. 1996) (cite omitted).

Here, though defendant's explanation for his "inadvertence" is thin at best, plaintiff offers little but indignation at the untimeliness (it was filed twelve hours and four minutes after the deadline) in support of striking the supplemental response. *See* doc. 90 at 2-3. She does not even suggest that she would be prejudiced by the filing, much less that the Court's own interest in efficient judicial administration would be harmed or that defendant acted in bad faith. *Id*. Because the relevant factors militate in favor of permitting the untimely filing, *see Riney*, 130 F.3d at 997-98, plaintiff's motion to strike defendant's supplemental response (doc. 90) is **DENIED**.

doc. 14 (Amended Complaint) at ¶ 2.[2]  Despite multiple complaints and obvious physical symptoms of serious infection (*i.e.*, discoloration around the tattoo; purplish-red skin on his arm, neck, and chest; a reddened mass on his neck and tenderness in his chest; pain; and difficulty with breathing and walking), prison medical providers refused to treat Randall between January 16 and 26, 2015. *Id.* at ¶¶ 3-4.

He submitted multiple sick call requests -- all ignored -- and after demanding antibiotics from defendant in the medical unit on January 23, 2015, Davison was temporarily placed in a segregation cell, untreated. Doc. 14 at ¶ 5; *see also* doc. 79 at Exh. 2 (Deposition of Calvin Ball (medical unit nurse)) & Exh. 3 (Deposition of Stacy Thrift (prison officer)).  Three days later, Randall was finally seen and, based on his symptoms, given antibiotics and rushed to the local emergency department.  *See id.*, Exh. 4 (Deposition of Tim Hiller (nurse practitioner)) at 34 (Randall "looked like he had a bad infection and that he was at risk of developing or going into septic shock.").  Randall's condition worsened, however, and he was transferred by air to Atlanta

---

[2]  Since the facts of Davison's injury and death are not directly relevant to the present motion, the Court relies on plaintiff's account.  That reliance should not be construed as an endorsement of the merits of plaintiff's claims.

Medical Center where he died on February 15, 2015. Doc. 14 at ¶ 7; *see also* Thrift Depo. at 52 & 79 (describing Randall as "a big old pus pocket" full of infection, such that his "toes turned black and he had to be placed on dialysis because his kidneys were shutting down."); doc. 79, Exh. 7 (Atlanta Med. Ctr. Discharge Summary).

The State initiated an immediate review of Randall's medical care. *See* doc. 79, Exh. 9 (Mortality Review, concluding Randall had received appropriate care on March 7, 2015); Exh. 8 (Deposition of Dean Broome (medical director)) at 8-10. On March 26, 2015, plaintiff's counsel mailed a litigation hold notice to the Georgia Department of Corrections Office of Legal Services, requesting the preservation of "[a]ll medical and mental health records pertaining to Randall Davison, including any inmate requests and responses thereto," his "inmate file," and more generally, "[d]ocuments . . . of any kind pertaining to Randall Davison." *Id.*, Exh. 10. The letter informed the Department of Corrections that such preservation was necessary because Randall "may have died as a result of deliberate indifference to his serious medical needs." *Id.*

The Office of Legal Services forwarded the litigation hold notice on to Georgia State Prison warden Stanley Williams, public information

4

officer Lynette Mobley, and statewide medical director Sharon Lewis. Doc. 79, Exh. 11. From there, it was forwarded on to deputy warden Trevonza Bobbitt, mental health director Madia West, and health services administrator Roy Sabine. *Id.*, Exh. 12. Sabine responded that medical records had been archived at Department of Corrections offices in Tift, Georgia. *Id.*

Sick call requests, however, are not archived with medical records, and instead are retained on site for "six months" before being destroyed. Doc. 79, Exh. 13 (Ga. Dep't of Corr. Pol'y VH30-0003); *see also* Broome Depo. at 54 (they are sometimes kept up to two or three years). So, Randall's sick call requests weren't retained with his medical records, and were apparently routinely destroyed at some point before plaintiff specifically sought them in 2016. *See id.*, Exh. 18 (letter dated May 13, 2016, seeking "sick call requests" and noting that none were included in Randall's medical records); Exh. 20 (request for production of documents dated October 19, 2016, seeking "sick call requests"); Exh. 22 (subpoena on the Department of Corrections Commissioner dated January 5, 2017, seeking same); Exh. 24 (subpoena on managing director of Georgia Correctional Healthcare dated January 13, 2017, seeking same).

5

Defendant offers no explanation as to why they were not saved from routine destruction in response to plaintiff's March 2015 litigation hold notice, which arrived long before they would have been destroyed pursuant to the standing retention policy. *See* docs. 85 & 87.

Segregation checklists ("30 minute documented checks" to verify the health and safety of prisoners held in segregation or isolation cells), however, are supposed to be kept with a prisoner's case history file for three years. *See* doc. 79, Exh. 26 (Ga. Dep't of Corr. Pol'y IIB09-0001) at ¶ VI.M (Individual Records to be kept of segregated inmates) & VII.C (Retention Schedule for individual records); Ga. Archives Schedule 1974-042A (Institutional Inmate Case History File), *available at* http://www.georgiaarchives.org/records/agency_view/161/P20 (last visited August 23, 2017) (requiring retention for three years). Despite that a segregation checklist was completed during Randall's temporary medical unit segregation, *see* Thrift Depo. at 41, and plaintiff requested copies of any segregation checklists well within the three year retention period, *see* doc. 79, Exh. 20 (request for production of documents dated October 19, 2016, seeking Randall's "complete institutional file"); Exh. 22 (subpoena on the Department of Corrections Commissioner dated

January 5, 2017, seeking same), it has not been located, *see* Thrift Depo. at 45.

Plaintiff seeks sanctions against defendant Nicolou[3] for the Department of Corrections' failure to maintain and preserve Randall's sick call requests and the segregation checklist completed while he was in the medical unit segregation cell on January 23, 2015. Doc. 79. She contends that the Department of Corrections is his agent, and he must be held to bear its failure to maintain these records. *Id*. Defendant Nicolou opposes, arguing that he did not have control over the lost documents; that plaintiff should have pursued this discovery dispute with the actual custodian of record (the Department of Corrections); the sick call requests were destroyed as part of a routine document retention policy; and that plaintiff has not been prejudiced by the loss of the segregation checklist, which contained at most "an officer signature and a time entry," not any comments about "the state of the inmate." Doc. 85 at 1-6*; see also* doc. 82, Exh. G (Deposition of Tomeka Browder

---

[3] Plaintiff also wants to sanction the "putative defendants" she seeks to add in her pending motion to amend the complaint (*see* doc. 73 (seeking to name Nurse Ball and Officer Thrift as defendants)). *See* doc. 79-1 at 1. The Court will not sanction hypothetical defendants. If leave to amend is granted, plaintiff is free to refile her motion at that time.

7

(registered nurse)) at 36-37; Exh. N (Deposition of Stacey Thrift, complete) at 56-57.

## II. ANALYSIS

"Spoliation is the destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." *Brown v. Chertoff*, 563 F. Supp. 2d 1372, 1377 (S.D. Ga. 2008). The Court has "broad discretion" to impose sanctions as part of its "inherent power to manage its own affairs and to achieve the orderly and expeditious disposition of cases." *Flury v. Daimler Chrysler Corp.*, 427 F.3d 939, 944 (11th Cir. 2005). Spoliation sanctions may include dismissal, exclusion of testimony, or an instruction to the jury to presume that the evidence would have been unfavorable to the spoliator. *Id.* The Court examines "the extent of the prejudice caused by the spoliation (based on the importance of the evidence to the case), whether that prejudice can be cured, and the culpability of the spoliator." *Oil Equip. Co. v. Modern Welding Co.*, 661 F. App'x 646, 652 (11th Cir. 2016).

Assuming without deciding that the Department of Corrections' loss of the sick call slips and segregation checklist can be imputed to

defendant Nicolou,[4] extreme sanctions are unwarranted. In considering

---

[4] Only those with possession, custody, and control may be sanctioned for their failure to preserve. *Sentry Select Ins. Co. v. Treadwell*, 734 S.E.2d 818, 848 (Ga. Ct. App. 2012) ("[i]t is axiomatic that in order for there to be spoliation, the evidence in question must have existed and been in the control of a party."); *Brewer v. Quaker State Oil Refining Corp.*, 72 F.3d 326, 334 (3d Cir. 1995) ("it is essential that the evidence in question be within the party's control.") (cite omitted), *cited in Watson v. Edelen*, 76 F. Supp. 3d 1332, 1343 (N.D. Fla. 2015) ("For a spoliation sanction to apply, it is essential that the evidence in question be within the party's control, that is, the party actually destroyed or was privy to the destruction of the evidence.").

Plaintiff does not argue that Nicolou, a physician's assistant with the Department of Corrections, had the authority to either preserve or destroy the sick call requests or the segregation checklist. Rather, she contends that the State of Georgia (and its arms, including the Department of Corrections) is his agent, and he should be sanctioned for *its* failure to preserve the evidence. Doc. 79-1 at 14 (quoting O.C.G.A. § 10-6-1 & *Daniels v. United States*, 86 F. Supp. 3d 1375, 1379 (S.D. Ga. 2015). The Court is unconvinced that Nicolou and the Department of Corrections have an insured-insurer type relationship of the same nature as the cases plaintiff has cited, none of which involved a corrections employee. *See* doc. 79-1 at 15-16. Indeed, the case law cited by plaintiff was largely unhelpful in determining whether spoliation may be imputed in this context to Nicolou, who did not participate in the spoliation. *See id.* & doc. 91 at 16-18.

The State of Georgia, of which the Department of Corrections is an agency, indemnifies corrections employees from civil suit and funds the defense of its employees in civil cases arising out of the scope of their employment. *See* O.C.G.A. § 45-9-1 *et seq.* In similar circumstances, a State's failure to preserve has been imputed to the individual defendant employee, even when he lacked any control over the retention or destruction himself. *See, e.g., Pettit v. Smith*, 45 F. Supp. 3d 1099, 1109-11 (D. Az. 2014); *Cordero v. Guzman*, 2017 WL 2610063 at *3 (E.D. Cal. June 16, 2017); *Ramos v. Swatzell*, 2017 WL 2857523 at *6 n. 1 (C.D. Cal. June 5, 2017); *Muhammad v. Mathena*, 2016 WL 8116155, at *7-8 (W.D. Va. Dec. 12, 2016). As in these cases, the Department of Corrections bore responsibility for preserving evidence and litigating cases filed by prisoners, and has taken control of Nicolou's defense. *See* Doc. 79, Exh. 37 (General Liability Agreement). This Court is skeptical that "spoliation of evidence may be imputed to a [party] who did not participate in the spoliation," *Pettit*, 45 F. Supp. 3d at 1110, particularly where, as here, it is undisputed that Nicolou himself could have done nothing to save the evidence, *see Storey v. Effinham Cty.*, 2017 WL 2623775 at *2 (S.D. Ga. June 16, 2017). The reasoning of these out-of-circuit cases is ultimately persuasive, however, given the Department of Corrections' flagrant failure to abide its duty to preserve the documents set forth in the litigation hold notice. It assumed the risk that, by failing

the particular spoliation sanction to impose, "courts should consider the following factors: (1) prejudice to the non-spoiling party as a result of the destruction of evidence, (2) whether the prejudice can be cured, (3) practical importance of the evidence, (4) whether the spoiling party acted in good or bad faith, and (5) the potential for abuse of expert testimony about evidence not excluded." *In re Delta/AirTran Baggage Fee Antitrust Litig.*, 770 F. Supp. 2d 1299, 1305 (N.D. Ga. 2011) (citing *Flury*, 427 F.3d at 945). Again, prejudice to plaintiff's case is the key -- even where the Department of Corrections clearly failed to abide its duty to preserve this evidence, unless it harms plaintiff's case, sanctions are inappropriate.

Plaintiff has been able to fully depose all the relevant witnesses (both staff and other prisoners), who described Randall's condition as they observed it in detail, and to gather sufficient facts to establish what happened and when to the decedent. *See* doc. 79, Exhs. 1-39; *In re Delta/Airtran*, 770 F. Supp. 2d at 1311 (any prejudice the plaintiffs suffered was mitigated by their opportunity to depose Delta employees

---

to conduct a thorough search to turn up all of Randall's "inmate requests" (*see* doc. 79, Exh. 10) it, and its employees which it otherwise indemnifies, would be subject to spoliation sanctions.

who had knowledge of facts related to the plaintiffs' claims).

It's clear from the deposition testimonies that Randall was in increasing pain and discomfort as the infection progressed, that he repeatedly sought and never received medical intervention, and that his condition visibly deteriorated until he was finally rushed to the emergency room on August 26, 2015. *See* Ball, Thrift, Hiller (staff) Depos.; *see also* doc. 79-1, Exh. 15 (Deposition of Jerry Reed (prisoner)) at 37-42 (testifying that he submitted several sick call requests for Randall and recalled that one said Randall "had an infection on his arm and he wanted to be seen."); Exh. 17 (Deposition of Tavis Oates (prisoner)) at 32-33 (testifying that he submitted "four or five" requests for Randall because his condition had worsened so that "he wasn't able to move no more"); Exh. 36 (Deposition of Gordon Herrick (prisoner)) at 3-4 (describing his observation of the progression of Randall's tattoo infection). It is not clear that any additional self-description of his symptoms on the sick call requests would add anything significant to plaintiff's case. *See* doc. 79-1 at 17 (the forms "would have provided . . . a contemporaneous record of the pain and other symptoms he was experiencing, the progress of his symptoms, and his attempts to receive

11

appropriate treatment."). Plaintiff simply has not demonstrated that she is so prejudiced by their loss that harsh sanctions should be imposed.[5]

As to the segregation checklist, assuming that it at some point existed, there is no evidence that it even contained any description of Randall's medical state. These forms are often limited to "an officer signature and a time entry," without any comments about "the state of the inmate." *See, e.g.*, doc. Browder Depo. at 36-37 & Thrift Depo. at 56-57. Even *had* the checklist contained a description of his condition, it would provide a single snapshot of Randall's condition when he sought antibiotics in the medical unit on January 23, 2015. And plaintiff already knows that "both Ball and Nicolou determined that [he] should be examined that morning" based on his pain complaints, that Randall had already been scheduled for sick call in response to one of his requests, and that the providers knew he had been complaining of muscular chest pain. *See* Ball Depo. at 27-32. Plaintiff does not say precisely what more information the segregation checklist (if it exists)

---

[5] Although it is unclear what, if any, prejudice plaintiff has suffered from the Department of Corrections' failure to preserve the documents expressly identified in her timely litigation hold notice, the sick call request forms *should* have been preserved, and they weren't. The Court will therefore impose a limited sanction to cure the loss, discussed below. *Scruggs v. Int'l Paper Co.*, 2012 WL 1899414 at *1 (S.D. Ga. May 24, 2012) (sanctions "extend to negligent, reckless, and intentional evidence destruction.").

could provide. *See* docs. 79-1 & 91.

Plaintiff has not shown that she is prejudiced to the extent that she is unable to prove her case. An adverse jury instruction is, therefore, unwarranted. *See Point Blank Solutions, Inc. v. Toyobo Am., Inc.*, 2011 WL 1456029 at *27 (S.D. Fla. Apr. 5, 2011) (if the plaintiff "cannot show that it is 'sufficiently impaired in [its] ability to prove its case,' then it cannot show 'entitlement to an adverse inference based on any destruction of [documents]'"). The Court does, however, find plaintiff's request to admit certain hearsay statements appropriate to remedy the limited loss of the sick call request forms. *See* doc. 79-1 at 21-22 (requesting the Court admit "any statements made by Randall [ ] concerning his medical condition and attempts to obtain medical attention"); *West v. Goodyear Tire & Rubber Co.*, 167 F.3d 776, 779 (2d Cir. 1999) (any sanction should "serve the prophylactic, punitive, and remedial rationales underlying the spoliation doctrine."); *id.* (any sanction imposed should be "designed to: (1) deter parties from engaging in spoliation; (2) place the risk of an erroneous judgment on the party who wrongfully created the risk; and[,] (3) restore 'the prejudiced party to the same position he [or she] would have been in absent the wrongful

13

destruction of evidence by the opposing party.'"). "Limited sanctions are therefore appropriate to redress this prejudice." *Storey*, 2017 WL 2623775 at *5.[6]

## III. CONCLUSION

To address the destruction of the sick call request forms, any hearsay statements made by Randall specifically regarding the contents, submission, and medical unit's response to those forms -- what he reported about the progression and severity of his tattoo infection, when and how often he had submitted them, and whether he had received any reply to his requests -- will be admitted. This narrow sanction should restore plaintiff to the same position she would have been in had the forms not been routinely destroyed, despite her litigation hold notice. Plaintiff's motion for sanctions is thus **GRANTED in part** as to the sick call request forms, and **DENIED in part** as to the segregation checklist.

**SO ORDERED**, this  29th  day of August, 2017.

*/s/ G.R. Smith*
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA

---

[6] Plaintiff remains free to request modification or reconsideration of this Order if she believes she can propose a more appropriately tailored sanction.