IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF GEORGIA
STATESBORO DIVISION

CINDY DAVISON, as Administrator  *
of the Estate of Randall         *
Davison,                         *
                                 *
    Plaintiff,                   *
                                 *
        v.                       *        CV 616-039
                                 *
STEPHEN NICOLOU, P.A.,           *
                                 *
    Defendant.                   *

**O R D E R**

Before the Court is Defendant's motion for summary judgment (doc. 81) and Plaintiff's motion to exclude the testimony of Dr. Kristine Patterson (doc. 80). The Clerk has given Plaintiff notice of the summary judgment motion and the summary judgment rules, of the right to file affidavits or other materials in opposition, and the consequences of default. Therefore, the notice requirements of Griffith v. Wainwright, 772 F.2d 822, 825 (11th Cir. 1985) (per curiam), have been satisfied. For the following reasons, Plaintiff and Defendant's respective motions are **DENIED**.

**I. BACKGROUND**

Randall Davison was an inmate at Georgia State Prison ("GSP"). (Def.'s Answer, Doc. 54, ¶ 13.) In early January

2015, Mr. Davison received two tattoos from another inmate. (Nursing Note, Jan. 26, 2015, Doc. 79-32). One tattoo was on Mr. Davison's neck and one was on his forearm. (Reed Dep., Doc. 84-7, at 36.) On January 21, 2015, Mr. Davison went to the GSP medical unit complaining of chest pain. (Nicolou Dep., Doc. 83-3, at 48-49.) Mr. Davison was examined by Defendant Stephen Nicolou, a physician assistant working at the GSP medical unit. (Id. at 9-10.) Defendant prescribed Mr. Davison anti-inflammatory medication and sent him back to his dorm. (Id. at 56-57.)

Over the next two days, Mr. Davison's condition deteriorated. Due to what would later be discovered was an infection caused by his tattoos, Mr. Davison's upper chest began to turn red and his neck appeared swollen. (Kozachyn Dep., Doc. 84-3, at 68.) On January 23, 2015, Mr. Davison returned to the GSP medical unit. (Ball Dep., Doc. 82-1, at 34-35.) Paul Kozachyn, another inmate who was waiting to be seen by a provider, claimed that Mr. Davison's infection was plainly visible and described his neck as "red and swollen to three or four times its normal size on one side . . . ." (Kozachyn Dep. at 67.) Mr. Davison was called into the waiting room and then told he could not be seen until the following Monday. (Id. at 34.) Instead of returning to his cell, Mr. Davison slipped into Defendant's office. (Id. at 36.) Defendant and nurse Calvin

2

Ball were in the office when Mr. Davison entered and "demand[ed] antibiotics." (Ball Dep. at 32; Thrift Dep., Doc. 83-4, at 35.) The meeting lasted a matter of seconds as Officer Stacy Thrift, who was at the other end of the hall, removed Mr. Davison and placed him in a holding cell for "being disrespectful." (Thrift Dep. at 34, 37.) Defendant provided no additional treatment to Mr. Davison. (Nicolou Dep. at 43.)

On Monday, January 26, 2015, Mr. Davison was brought back to the medical unit by wheel chair. (Oates Dep., Doc. 79-33, at 58). Nurse practitioner Timothy Hiller recognized that Mr. Davison was suffering from an infection and needed to go to a hospital. (Hiller Dep., Doc. 83-2, at 34.) He was then transferred to Meadows Regional Medical Center ("MRMC") in Vidalia, Georgia. (MRMC Physician Documentation, Doc. 79-6, at 6.) On February 8, 2015, suffering from respiratory and renal failure, Mr. Davison was flown to Atlanta Medical Center. (Atlanta Med. Ctr. Discharge Summary, Feb. 15, 2015, Doc. 79-8, at 1.) He never recovered from his infection and died on February 15, 2015. (Id.)

On April 4, 2016, Cindy Davison--Randall Davison's sister and the administrator of his estate--brought the present action against Georgia Correctional Health, Sergeant Dedrick Anthony, and Defendant for violating Mr. Davison's Eighth Amendment

rights, pursuant to 42 U.S.C. § 1983.[1] (Doc. 1.) Defendant now moves for summary judgment and argues that he is entitled to qualified immunity.

## II. LEGAL STANDARD

A motion for summary judgment will be granted if there is no disputed material fact and the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). Facts are material if they could affect the results of the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The court must view facts in the light most favorable to the non-moving party and draw all inferences in its favor. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). The movant initially bears the burden of proof and must demonstrate the absence of a disputed material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The movant must also show no reasonable jury could find for the non-moving party on any of the essential elements. Fitzpatrick v. City of Atlanta, 2 F.3d 1112, 1115 (11th Cir. 1993).

If the movant carries its burden, the non-moving party must come forward with significant, probative evidence showing there is a material fact in dispute. Id. at 1116. The non-movant must respond with affidavits or other forms of evidence provided

---

[1] Plaintiff subsequently dropped her claims against Georgia Correctional Health and Mr. Anthony. (Docs. 22, 78.)

4

by Federal Rule of Civil Procedure 56. Id. at 1116 n.3. The non-movant cannot survive summary judgment by relying on its pleadings or conclusory statements. Morris v. Ross, 663 F.2d 1032, 1033-34 (11th Cir. 1981). After the non-movant has met this burden, summary judgment is granted only if "the combined body of evidence is still such that the movant would be entitled to a directed verdict at trial - that is, such that no reasonable jury could find for the non-movant." Fitzpatrick, 2 F.3d at 1116.

### III. DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Defendant claims that summary judgment is appropriate because he is entitled to qualified immunity. Qualified immunity protects government officials from suit so long as their conduct does not violate clearly established law. Morris v. Town of Lexington, 748 F.3d 1316, 1321 n.15 (11th Cir. 2014). The defendant must first show he was acting within his discretionary authority. Holloman ex rel. Holloman v. Harland, 370 F.3d 1252, 1265 (11th Cir. 2004). The burden then shifts, and the plaintiff must show qualified immunity is not appropriate. Lee v. Ferraro, 284 F.3d 1188, 1194 (11th Cir. 2002).

To survive summary judgment, the plaintiff must show the officer's conduct (1) violated a constitutional right that (2)

was clearly established when the violation occurred. Id. Clearly established rights are those set by precedent of the United States Supreme Court, the Eleventh Circuit, and the Georgia Supreme Court. Snider v. Jefferson State Cmty. Coll., 344 F.3d 1325, 1328 (11th Cir. 2003). The case does not need to be directly on point and only needs to give the defendant fair notice that his conduct was unconstitutional. Mitello v. Sherriff of the Broward Sheriff's Office, 684 F. App'x 809, 813 (11th Cir. 2017). Plaintiff does not dispute that Defendant was acting in his discretionary authority. Therefore, Plaintiff must show that Defendant violated Mr. Davison's Eighth Amendment rights and that those rights were clearly established.

**A. Constitutional Violation**

There is evidence in the record to support finding a constitutional violation. Deliberate indifference to a prisoner's serious medical need is a violation of the Eighth Amendment. Goebert v. Lee Cnty., 510 F.3d 1312, 1326 (11th Cir. 2007). To succeed on a deliberate indifference claim, the plaintiff must show: (1) a serious medical need; (2) the defendant was deliberately indifferent to that need; and (3) that indifference caused the plaintiff's injury. Id.

### *1. Serious Medical Need*

The first element of a deliberate indifference claim--serious medical need--asks the plaintiff to show her medical need "'is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" Goebert, 510 F.3d at 1326 (quoting Hill v. Dekalb Reg'l Youth Det. Ctr., 40 F.3d 1176, 1187 (11th Cir. 1994), overruled in part on other grounds by Hope v. Pelzer, 536 U.S. 730, 739 n.9 (2002)); Brown v. Johnson, 387 F.3d 1344, 1351 (11th Cir. 2004) ("[T]he medical need must be one that, if left unattended, poses a substantial risk of serious harm.").

Defendant argues that Mr. Davison did not have a serious medical need because his infection was not diagnosed by a physician before he met with Defendant. Defendant's position is based upon a misunderstanding of the serious medical need standard. Deciding whether a prisoner had a serious medical need is an objective inquiry that focuses on the ailment itself. Mr. Davison suffered from an infection, which was diagnosed shortly before his death. (Heard Dep., Doc. 84-4, at 24; Heard Report, Doc. 80-9, at 11.) The bacterial infection Mr. Davison suffered from frequently causes death if it is not treated. (Heard Rep. at 3.) Thus, Plaintiff has shown there is evidence

7

in the record to support a finding that Mr. Davison had a serious medical need.

## 2. Deliberate Indifference

Defendant also disputes whether there is any evidence demonstrating he acted with deliberate indifference to Mr. Davison's serious medical need. To show deliberate indifference, a plaintiff must demonstrate: (a) the defendant was subjectively aware of the risk of harm; and (b) disregarded that risk (c) by engaging in conduct that was more than grossly negligent. Goebert, 510 F.3d at 1327. "The official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer v. Brennan, 511 U.S. 825, 837 (1994). The defendant will not be held responsible for failing to take action if "he should have perceived the risk but did not . . . ." Id., at 838. Nevertheless, subjective knowledge can be inferred when the risk was obvious. Id. at 842. "Whether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence."[2] Id.

---

[2] Plaintiff argues that Defendant waived his opportunity to challenge whether he knew about Mr. Davison's serious medical need by not raising that issue in his motion for summary judgment. Certainly, arguments raised for the first time in a reply brief may be deemed waived. Herring v. Sec'y, Dep't of Corr., 379 F.3d 1338, 1342 (11th Cir. 2005); Milwood-Jones v. Holder, 2016 WL 1189494, at *8 n.5 (S.D. Ga. Mar. 22, 2016). Nonetheless, this argument

8

### a. Subjective Knowledge

Plaintiff points to evidence in the record that shows the symptoms of Mr. Davison's infection were obvious before he met Defendant on January 23, 2015. Shadaya Latimore, who was a guard in Mr. Davison's dormitory, noticed Mr. Davison's "swollen red neck" on January 23, 2015, at 5:10 PM, several hours after his meeting with Defendant. (Latimore Dep., Doc. 84-8, at 37.) Paul Kozachyn and Tavis Oates, inmates in Mr. Davison's dormitory, claimed that the infection was plainly visible moments before[3] Mr. Davison met Defendant. (Kozachyn Dep., at 67; Oates Dep., Doc. 84-2, at 27.) Defendant argues that because Mr. Kozachyn and Mr. Oates do not identify a specific date and Officer Latimore did not see Mr. Davison's symptoms until after his meeting with Defendant, Plaintiff has not shown subjective knowledge. However, from the consistent description by Mr. Kozachyn, Mr. Oates, and Officer Latimore, a jury could reasonably conclude that Mr. Davison's symptoms were visible before his meeting with Defendant on January 23, 2015. The

---

concerns an essential element of Plaintiff's case; Plaintiff could not have been surprised by Defendant's challenge. Moreover, Plaintiff had a fair opportunity to respond, as she did in her sur-reply. Accordingly, Plaintiff was not prejudiced by Defendant's late challenge.

[3] Defendant claims that a disagreement between two of Plaintiff's witnesses essentially negates their evidentiary value. Unlike Mr. Kozachyn, Jerry Reed, who helped walk Mr. Davison to medical on January 23, claims that the infection on Mr. Davison's neck did not appear until January 25. (Reed Dep. at 31.) Plaintiff has presented two different witnesses who do not agree on a material fact. Granting summary judgment because of such a dispute would require weighing evidence, which is impermissible at this stage. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). Indeed, a jury could find Mr. Kozachyn's testimony more believable than Mr. Reed's.

obviousness of Mr. Davison's medical need could support a finding of subjective knowledge.

Defendant also maintains that the brevity of his meeting with Mr. Davison precludes finding that Defendant was subjectively aware of Mr. Davison's serious medical need. Defendant explains that he could not diagnose Mr. Davison's condition without performing a medical evaluation and such a diagnosis was a prerequisite to subjective knowledge. Defendant asserts that Plaintiff's expert, Henry Heard, P.A., supports the necessity of a diagnosis. However, the subjective knowledge sub-element of a deliberate indifference claim is not so narrowly defined as to require a medical diagnosis. Moreover, while Mr. Heard confirmed that a full evaluation would be needed to accurately diagnose Mr. Davison, Mr. Heard went on to say that "any reasonable individual can tell an infection by looking at it" and that such a conclusion can be made without performing an exam. (Heard Dep. at 40, 52.) A reasonable jury could hear both of Mr. Heard's statements and conclude that while a full evaluation would be ideal before a provider begins treatment, a physician assistant would know Mr. Davison was suffering from an infection just by looking at him.

### b. Deliberate Disregard

Defendant also argues that there is no evidence he disregarded Mr. Davison's serious medical need. To satisfy the

10

second sub-element of deliberate indifference--deliberate disregard--a plaintiff must show the defendant failed to take reasonable measures to avoid the harm. Farmer, 511 U.S. at 847. Even if the defendant knew about the risk, he will not be held liable if he acted reasonably, even if the harm was not avoided. Pourmoghani-Esfahani v. Glee, 625 F.3d 1313, 1317 (11th Cir. 2010). Nevertheless, disregard can be established through a single episode of misconduct. As with the other sub-elements, "[d]isregard of the risk is . . . a question of fact that can be shown by standard methods." Goebert, 510 F.3d at 1327.

Defendant claims because the record shows that Officer Thrift prevented him from providing treatment to Mr. Davison, Plaintiff cannot show deliberate disregard. Plaintiff responds that Georgia Department of Corrections ("GDOC") Policy VH01-0002 (Oct. 1, 2012), which the Court takes notice of pursuant to Federal Rule of Evidence 201(c)(1), gave Defendant authority to ensure that "security considerations do not compromise decisions and actions regarding necessary health care for any inmate/prisoner." (Doc. 95-1, at 2.)[4] Although Officer Thrift removed Mr. Davison from the clinic, Defendant retained

---

[4] Defendant argues that this evidence should not be considered because Plaintiff failed to disclose the policy during discovery. While Federal Rule Civil Procedure 26(a)(3) demands disclosure of documents in the party's possession, "'[i]t is well established that discovery need not be required of documents of public record which are equally accessible to all parties.'" Thomas v. City of Jacksonville, 2014 WL 12708970, at *1 (M.D. Fla. Jul. 16, 2014) (quoting Sec. & Exch. Comm'n v. Samuel H. Sloan & Co., 369 F. Supp. 994, 995 (S.D.N.Y. 1973)). Because the GDOC policy is public record, exclusion is not appropriate.

authority to provide treatment and therefore could be found to have disregarded the risk that faced Mr. Davison.

### c. Greater than Grossly Negligent Conduct

The final sub-element of deliberate indifference involves demonstrating that the defendant's conduct amounted to more than gross negligence. To rise to the level of an Eighth Amendment violation, the care must be "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." Rogers v. Evans, 792 F.2d 1052, 1058 (11th Cir. 1986). This includes providing an easier but less effective treatment, providing treatment that is grossly inadequate, or providing such minimal care that it amounts to no treatment at all. McElligott v. Foley, 182 F.3d 1248, 1255 (11th Cir. 1999).

Defendant's position that there is no evidence to support finding disregard by more than gross negligence rests entirely on distinguishing the facts here from cases where more than gross negligence was found. Courts do not define deliberate indifference so narrowly. Although the facts in Marsh v. Butler Cnty., 238 F.3d 1014 (11th Cir. 2001), are distinguishable from this case, Marsh established that doing nothing in response to a serious medical need is conduct that is more than grossly negligent. Marsh, 238 F.3d at 1029. The evidence shows

Defendant did not provide treatment after Mr. Davison was removed from his office. (Nicolou Dep. at 43.) If a jury found Defendant knew Mr. Davison was suffering from an infection, it could conclude that his decision to provide no further treatment was more than gross negligence.

Plaintiff has provided evidence showing that when Mr. Davison appeared in Defendant's office, Mr. Davison was suffering from an infection that Defendant recognized notwithstanding the brevity of their meeting. (Kozachyn Dep. at 68; Heard Dep. at 52). Despite his knowledge, Defendant failed to provide treatment, which could constitute disregard by more than gross negligence. Accordingly, there is evidence to support the second element of Plaintiff's deliberate indifference claim.

### 3. Causation

As the last element of a deliberate indifference claim, "[a] plaintiff must also show that the constitutional violation caused his injuries." Marsh, 268 F.3d at 1028. This can be shown by the defendant's personal participation in the constitutional violation. Goebert, 510 F.3d at 1327. Defendant does not dispute causation, and the Court is satisfied that record contains sufficient evidence of causation to survive summary judgment. As previously established, although Defendant

did not remove Mr. Davison from his office, he knew of Officer Theft's conduct. Defendant's acquiescence to Mr. Davison's removal may establish personal participation. See Carswell v. Bay Cty, 854 F.2d 454, 457 n.3 (11th Cir. 1988); Camps v. City of Warner Robins, 822 F. Supp. 724, 735 (M.D. Ga. 1993). Given the precipitous nature of an untreated bacterial infection, a jury could find Defendant's delay or refusal to provide adequate treatment caused Mr. Davison's suffering and death. (See Heard Dep. at 33.)

Plaintiff has identified evidence in the record that would support a deliberate indifference cause of action. A bacterial infection, like the one Mr. Davison succumbed to, is deadly if left untreated and constitutes a serious medical need. There is evidence to support an inference that because Mr. Davison's symptoms were obvious, Defendant knew of Mr. Davison's serious medical need. If a factfinder confirmed these elements, it could find that Defendant's failure to provide immediate treatment led to Mr. Davison's death.

**B. Clearly Established Right**

Plaintiff argues that Defendant is not entitled to qualified immunity because there is evidence in the record that Defendant knew of Mr. Davison's serious medical need. The law is clearly established "that knowledge of the need for medical care and an intentional refusal to provide that care constitutes

14

deliberate indifference." Adams v. Poag, 61 F.3d 1537, 1543-44 (11th Cir. 1995). Moreover, "[a] core principle of Eighth Amendment jurisprudence . . . is that prison officials with knowledge of the need for care may not, by failing to provide care, delaying care, or providing grossly inadequate care, cause a prisoner to needlessly suffer the pain resulting from his or her illness." McElligott, 182 F.3d at 1257. Thus, Defendant's entitlement to qualified immunity depends on whether he knew of Mr. Davison's serious medical need and intentionally refused to provide treatment. Because there is evidence in the record to support such a finding, Defendant's motion for summary judgment is **DENIED**.

## IV. PLAINTIFF'S MOTION TO EXCLUDE DR. KRISTINE PATTERSON'S TESTIMONY

Plaintiff moves to exclude the testimony of Kristine Patterson, M.D., who will testify as to when Mr. Davison began showing symptoms of an infection. Specifically, Dr. Patterson opines that Mr. Davison did not begin showing symptoms of an infection until after January 21, 2015. (Patterson Report, Doc. 80-8, at 5.) Under Federal Rule of Evidence 702, district courts act as "gatekeepers" to ensure the quality of expert testimony. Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 596-97 (1993). While performing this function, courts must confirm "(1) the expert is qualified to testify competently

15

regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in *Daubert*; and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue." City of Tuscaloosa v. Harcros Chems., Inc., 158 F.3d 548, 562 (11th Cir. 1998). A court performing this function must keep in mind that the goal is not to determine the persuasiveness of the evidence. Quiet Tech. DC-8, Inc. v. Hurel-Dubois UK Ltd., 326 F.3d 1333, 1341 (11th Cir. 2003). Some weaknesses in expert testimony are better handled through cross-examination rather than exclusion. Id.

Plaintiff claims that because Dr. Patterson failed to include evidence that contradicted her conclusions, she has not reliably applied her differential diagnosis methodology. Plaintiff explains that because there are "more than a dozen" pieces of evidence that suggest Mr. Davison's arm was infected before he was admitted to MRMC, Dr. Patterson should not be allowed to claim there was no such infection. However, none of the evidence Plaintiff cites inherently contradicts Dr. Patterson's findings. For example, the MRMC file lists "INFECTED ARM" as Mr. Davison's "Stated Complaint." (MRMC ED Summary, Doc. 18, at 8.) What Mr. Davison claimed was the source of his illness could be reasonably disregarded by Dr.

16

Patterson after considering Plaintiff's medical records as a whole. Dr. Patterson also gave a reasonable explanation for why, despite this evidence, her conclusions remained viable. (Patterson Dep., Doc. 84-9, at 51.) See also Wilson v. Taser, 303 F. App'x 708, 714 (11th Cir. 2008). The fact that Dr. Patterson gave greater weight to certain pieces of evidence than others does not demonstrate that her methods are unreliable. See Jones v. Otis Elevator Co., 861 F.2d 655, 662 (11th Cir. 1988) (while an expert's testimony must be supported by facts, "absolute certainty is not required"). Plaintiff's concerns would be better addressed through cross-examination than exclusion. Accordingly, Plaintiff's motion to exclude Dr. Patterson's testimony is **DENIED**.

## V. CONCLUSION

Upon the foregoing, Defendant's Motion for Summary Judgment (doc. 81) and Plaintiff's Motion to Exclude the Testimony of Dr. Kristine Patterson's (doc. 80) are **DENIED**.

**ORDER ENTERED** at Augusta, Georgia, this 12th day of March, 2018.

J. RANDAL HALL, CHIEF JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA